IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

YUSUF ABDUR RAHIM, #152643,   )
a.k.a., MANSON FISHER, JR.,     )
                           )
      Plaintiff,         )
                           )
     v.               )   CIVIL ACTION NO. 2:04-CV-708-MHT
                           )             [WO]
                           )
DONAL CAMPBELL, et al.,     )
                           )
      Defendants.     )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Yusuf Abdur Rahim ("Rahim"), a state inmate, contends that the defendants violated his constitutional rights with respect to actions related to the provision of a diabetic diet. Rahim names Donal Campbell, the commissioner of the Alabama Department of Corrections, Alleric Hope, chief steward at the William E. Donaldson Correctional Facility, Sgt. Wallace Petterson, a correctional officer at such facility, and Dottie Mosley, a consulting dietician for the Alabama Department of Corrections, as defendants in this cause of action.

The defendants filed special reports and supporting evidentiary materials addressing each of the plaintiff's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as motions for summary judgment. *See Order of December 22, 2004 - Court Doc. No. 27.* Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of such motions, the

evidentiary materials filed in support thereof and Rahim's response in opposition to the motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## I.  CLAIMS FOR RELIEF

Rahim maintains that defendant Campbell retaliated against him for his participation as a class plaintiff in *Gaddis v. Campbell*, Case Action No. 2:03-CV-390-MHT (M.D. Ala. 2004),  a "suit challenging the constitutional adequacy of medical care provided diabetic[]" inmates, when Campbell "sent out a memo directing that all diabetic inmates . . . receive less food than the regular population."  *Plaintiff's Complaint* at 3. Rahim further "contends that this act was not due to the staff physician prescribing it for all diabetic inmates, and is not consistent with the American Diatetic (sic) Association Manual of Clinical Diet[s] . . ."  *Id* at 3-4.  He asserts "that there is no legitimate reason to treat diabetics in this manner."  *Id*. at 4.  In a supplemental complaint, Rahim complains that defendants Hope and Petterson conspired against him to implement the provisions of defendant Campbell's alleged memo.  *November 2, 2004 Supplemental Complaint* at 3. The court therefore construes the complaint to contain claims of retaliation, deliberate indifference to Rahim's dietary needs and conspiracy.

The defendants deny they acted in violation of Rahim's constitutional rights.

2

Specifically, defendant Campbell maintains that he did not issue a memo requiring that diabetic inmates receive less food than other inmates and, instead, asserts that he advised correctional personnel to undertake all necessary actions to ensure compliance with the dietary terms of the settlement agreement entered in *Gaddis*. *Defendants' Exhibit 9 - March 23, 2004 Memorandum of Commissioner Donal Campbell*. ("It is imperative that all facilities comply with the provisions of Judge Thompson's Order and [the Settlement] Agreement [entered in *Gaddis*]. . . . Please work closely with your facilities (sic) health care unit to ensure compliance with the Settlement agreement. The availability of diabetic meals and snacks for this segment of the inmate population is necessary as is documentation that diabetic meals were prepared and are made available for consumption. Please ensure and document that other diabetic items are available.").

The provision and content of diabetic meals are addressed in a memorandum issued by Barbara Holly, a food service specialist employed by the Alabama Department of Corrections. In this memorandum, Ms. Holly notes that correctional staff "will probably get complaints from the inmates because of some of the procedures" and changes made necessary by the settlement agreement in *Gaddis*. *Defendants' Exhibit 6 - March 16, 2004 Memorandum of Barbara Holly* at 1. Ms. Holly advises as follows:

> Due to the recent lawsuit filed by ADOC inmates in regard to the therapeutic menus, we have made changes so that we will be in compliance with the judge's decision. He directed us "to revise the Consistent Carbohydrate Diet and the 1800 Calorie Diet so that they will be in accordance with the most current standards for diabetic diets". The judge also delved into amounts of

3

fat, carbohydrates, proteins, and cholesterol.  We have adjusted the menu accordingly.  I won't go into every change that we made but some of the items (because of diet restrictions) that I feel you may have a problem with are:

Due to restriction of 300 mg. of cholesterol per day inmates on therapeutic diets will receive only one egg at breakfast.

Due to the number of bread exchanges they are allowed each day, they will receive only one biscuit at breakfast and usually one roll at lunch or dinner.

Due to the number of fruit exchanges some will receive 8 oz. of fruit at a meal and 8 oz. of orange juice at breakfast.  Others (1800 cal) will receive only 4 oz. of fruit and 4 oz. juice.

Due to the number of fat exchanges allowed each day, there will be no butter on the biscuits, bread, or rolls.

One ounce of meat is equal to one meat exchange, so on the 1800 calorie diet only two ounces of meat is allowed at some meals.  This means that your stewards/cooks are going to have to cut a 4 ounce meat patty in half to serve to the inmate.

*Defendants' Exhibit 6 - March 16, 2004 Memorandum of Barbara Holly* at 1.

In response to "some confusion" over diabetic menus and to "ensure a consistent ADOC practice at all facilities[,]" defendant Campbell issued a Memorandum to all wardens on May 19, 2004.  *Defendants' Exhibit 10 - May 19, 2004 Memorandum of Donal Campbell*.  This memorandum identified the two diabetic diets available to inmates as "[t]he eighteen hundred (1800) calories per day diet, which is to be administered <u>only</u> upon doctor's orders [and] [t]he twenty-two hundred (2200) calories per day diet (also called the consistent carbohydrate diet) which should be administered when an inmate's file contains

no doctor's order for a diet.  The [2200]-calorie diet can, of course, also be given upon doctor's orders....  Provide all diabetic inmates only the diet ordered by the doctor.... Diabetic inmates are not to receive the non-diabetic (3200-calories/day) diet." *Id*.

## II.  STANDARD OF REVIEW

To survive the defendants' properly supported motions for summary judgment, Rahim is required to produce some evidence which would be admissible at trial supporting his constitutional claims.  *See* Rule 56(e), *Federal Rules of Civil Procedure*.  Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984).  Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.");

5

*Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving part, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Consequently, where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to any material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact.  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Rahim has failed to

demonstrate that there is a genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  *Retaliation*

Rahim contends that the defendants retaliated against him for his participation in *Gaddis*.  The defendants, however, maintain that any action they took with respect to the meals provided to diabetics occurred in an effort to comply with the terms of the settlement agreement entered in *Gaddis*, not because Rahim had participated in this lawsuit.  The affidavits and evidentiary materials submitted by the defendants support this assertion.

To present a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (1) he engaged in a constitutionally protected activity, (2) he suffered adverse treatment simultaneously with or subsequent to such activity, and (3) a causal connection existed between the protected activity and the adverse action. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d 126, 131 (2nd Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Proper assertion of a claim for retaliation requires that a prisoner allege that correctional officials intended to retaliate for his exercise of a right protected under the Constitution and, but for the retaliatory motive, the adverse act complained of would not have occurred.  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516

7

U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).  However, it is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging actions of correctional personnel.  *Woods*, 60 F.3d at 1166.  "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care.  *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983).  This is [necessary because prisoners'] . . .  claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act."  *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence which, once established, raises a presumption that prison officials retaliated against the inmate.  *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Merely alleging the ultimate fact of retaliation, however, is insufficient.  *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166.   Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation.  *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner

8

retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion and, thus, does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine*, *supra*. Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient and admissible evidence that the proffered reason for the adverse decision is a pretext for retaliation. *Id*.

Rahim alleges that the defendants retaliated against him for participating in a previous civil action, thus satisfying his burden of establishing that he had engaged in a protected activity. *See Donnellon*, 794 F.2d at 600-601. Nevertheless, the defendants have demonstrated through affidavits and other relevant admissible evidence that the adverse actions about which Rahim complains resulted solely from their attempts to comply with the terms of a settlement agreement issued by this court. In response, Rahim offers only his conclusory allegation that the defendants' actions were retaliatory. As this court must "carefully scrutinize retaliation claims" arising from adverse actions of correctional personnel, *Woods*, 60 F.3d at 1166, and evaluate such claims "with skepticism and

particular care[,]" *Dawes*, 239 F.3d at 491, it is clear that Rahim's conclusory allegation is insufficient to show that the reasons proffered by the defendants and substantiated by the evidentiary materials are pretextual. Consequently, the defendants are entitled to summary judgment on the retaliation claim as Rahim has failed to establish a causal relationship between his protected activity and the challenged adverse actions. *Farrow*, 320 F.3d at 1249.

### B. Deliberate Indifference

To prevail on a claim concerning an alleged denial of adequate dietary needs in violation of the Eighth Amendment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his health. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."). When seeking relief based on deliberate indifference of correctional personnel, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *see also Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v.*

*Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'  *Estelle*, 429 U.S. at 105, 97 S.Ct. at 291; *Mandel*, 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'  *Rogers*, 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Moreover, "whether government

actors should have employed additional . . . forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  Thus, to survive summary judgment on his claim of deliberate indifference, Rahim is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

The evidentiary materials before the court demonstrate that the defendants altered the diabetic menus to comply with the terms of the settlement agreement entered in *Gaddis*. The menu modifications occurred upon instruction of a registered dietician and a food service specialist who, after review of the standards set forth by the American Diabetes Association [ADA], determined that the modifications were consistent with such standards. *Defendants' Exhibit 6 - March 16, 2004 Memorandum of Barbara Holly*; *Defendant's Exhibit 7 - April 30, 2004 Message of Barbara Holly*.  The record is completely devoid of

evidence that the defendants had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Rahim with respect to the diabetic menu provided, and that the defendants actually drew this inference and thereafter ignored the known risk.  Rahim has therefore failed to establish the requisite element of subjective awareness on the part of defendants.  Moreover, although Rahim makes the conclusory allegation that he should have received a different diet, this assertion, without more and in light of the acknowledged facts of this case, does not amount to deliberate indifference. *Waldrop*, 871 F.2d at 1033; *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). Since there is no evidence before the court indicating that the defendants acted with deliberate indifference to Rahim's dietary needs, summary judgment is due to be granted in favor of the defendants.

### C. Conspiracy

Rahim makes the purely speculative allegation that the actions of defendants Hope and Petterson in providing meals based on the directives of the dietician as mandated by the terms of the settlement agreement, and advising him of the terms of the agreement, resulted from a conspiracy among the defendants.  *November 2, 2004 Supplemental Complaint* at 3.  Rahim also appears to allege that all of the actions about which he complains occurred due to a conspiracy against him.

A conspiracy claim justifiably may be dismissed because of the conclusory, vague, and general nature of the allegations of a conspiracy.  *Fullman v. Graddick*, 739 F.2d 553,

556-557 (11th Cir. 1984).   The court has carefully reviewed Rahim's complaint, as amended.   At best, the assertions made by Rahim are self serving, purely conclusory allegations that fail to assert those material facts necessary to establish a conspiracy between the defendants.  *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir. 1988) (to properly state a claim for relief based on a conspiracy, a plaintiff must plead that the offending parties "reached an understanding" to deny the plaintiff his constitutional rights); *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (merely "stringing together" acts, without showing contacts between defendants which could prove that these parties "reached an understanding" to violate plaintiff's rights, is insufficient to demonstrate the existence of a conspiracy).  Other than these allegations, Rahim presents to indicate that the defendants entered into a conspiracy to deprive him of his constitutional rights.   In light of the foregoing, the court concludes that the bare and conclusory allegations of a conspiracy submitted by Rahim are insufficient to support a claim for relief under 42 U.S.C. § 1983. *Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557.

### D.  Violation of Settlement Agreement

In *Gaddis*, the parties entered into a settlement agreement regarding challenges to treatment provided to diabetic inmates in the Alabama prison system.  That agreement, negotiated by counsel for the plaintiff class, of which Rahim is a member, resolved the existing claims for injunctive relief but, by its terms, did not preclude members of the class from bringing individual damage actions.  *Defendant's Exhibit 4* at 11.  The agreement did,

14

however, expressly bar enforcement of the settlement agreement in federal court. *Id*. at 10 ("This Settlement Agreement is not a consent decree, and is not enforceable in federal court."). Thus, to the extent that Rahim bases his complaint on an alleged violation of the settlement agreement entered in *Gaddis*, he is entitled to no relief as this settlement agreement is not enforceable in federal court.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motions for summary judgment filed by the defendants be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before June 5, 2006 the parties may file objections to the Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from

attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 24th day of May, 2006.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE